1   Scott Alan Burroughs (SBN 235718)
    scott@donigerlawfirm.com
2   Trevor W. Barrett (SBN 287174)
    tbarrett@donigerlawfirm.com
3   Kelsey M. Schultz (SBN 312199)
    kschultz@donigerlawfirm.com
4
    DONIGER / BURROUGHS
5   603 Rose Avenue
6   Venice, California 90291
    Telephone: (310) 590-1820
7   Attorneys for Plaintiff

8
                 **UNITED STATES DISTRICT COURT**
9                **CENTRAL DISTRICT OF CALIFORNIA**

10  THE HELMUT NEWTON                    Case No.:
    FOUNDATION and JONATHAN
11  LANDREY                              PLAINTIFF'S COMPLAINT FOR:

12                                         1. COPYRIGHT
    Plaintiffs,                              INFRINGEMENT;
13
                                           2. VICARIOUS AND/OR
14  v.                                        CONTRIBUTORY
                                              COPYRIGHT
15                                            INFRINGEMENT
    NORMAN SOLOMON, an individual;
16  GLOBAL IMAGES USA, a California        3. VIOLATIONS OF 18 U.S.C.
    corporation; ARTOGRAPHY LIMITED          § 1961(C)
17  CO., a New Jersey corporation;
    CONTACT PHOTO LAB, a California        4. WIRE AND MAIL FRAUD,
18  corporation; BIG AUSTRALIA PTY,          VIOLATIONS OF 18 U.S.C.
    LTD., an Australian private company      §§ 1341, 1343
19  doing business as "Lyons Gallery";
20  PETER NIGEL NEILSON, an individual;   5. VIOLATIONS OF 18
    KEITH PETER ALLSOPP, an individual;     U.S.C.A. § 2318
21  MICHAEL SHAUN CARTER, an
    individual; and DOES 1 through 10,    6. VIOLATION OF THE
22                                           LANHAM ACT
23  Defendants.
                                           7. INTENTIONAL
24                                            MISREPRESENTATION

25                                         8. NEGLIGENT
                                              MISREPRESENTATION
26
                                           9. FRAUD
27
                                         Jury Trial Demanded
28

                              - 1 -
                            COMPLAINT

Plaintiffs The Helmut Newton Foundation and Jonathan Landrey, by and through their undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## JURISDICTION AND VENUE

1.      This action arises under the Copyright Act of 1976, Title 17 U.S.C., §§ 101 *et seq*., the Lanham Act 15. U.S.C., §§ 1051 *et seq*., as well as the federal racketeering statute, 18 U.S.C. § 1946(c).

2.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(2), and 1338(a)-(b).

3.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Specifically, the Subject Photography (as defined below) was reproduced in, and distributed from Los Angeles, California.

## PARTIES

4.      Plaintiff The Helmut Newton Foundation ("NEWTON") is a foundation formed in Zurich, Switzerland, and it operates in Küsnacht, canton of Zurich, and in Berlin.

5.      Plaintiff Jonathan Landrey ("LANDREY") is an individual residing in London, England.

6.      Defendant Norman Solomon ("SOLOMON") is an individual, and Plaintiff is informed and believes and thereon alleges that SOLOMON is a resident of Los Angeles, California.

7.      Plaintiff is informed and believes and thereon alleges that Defendant Global Images USA ("GLOBAL IMAGES") is a California corporation, with a principal place of business located at 6250 Hollywood Blvd., Los Angeles, CA 90028.

8.      Plaintiff is informed and believes and thereon alleges that Defendant Artography Limited Co. ("ARTOGRAPHY") is a New Jersey corporation, with a

1  principal place of business located at 333 Sylvan Avenue, Suite 220, Englewood
2  Cliffs, NJ 07632, and is doing business in and with California, including contracting
3  and conspiring with California resident, SOLOMON to distribute the Subject
4  Photography (as defined below).

5       9.    Plaintiff is informed and believes, and thereon alleges that, Defendant
6  Contact Photo Lab ("CONTACT") is a California corporation, with a principal place
7  of business located at 618 Moulton Avenue, Suite E, Los Angeles, California 90031,
8  and is doing business in and with California, including contracting and conspiring
9  with California resident, SOLOMON to modify, reproduce and distribute the Subject
10  Photography (as defined below).

11       10.   Plaintiff is informed and believes and thereon alleges that Defendant Big
12  Australia Pty, Ltd., doing business as "Lyons Gallery" ("LYONS GALLERY") is an
13  Australian private company, with a principal place of business located at 259 Victoria
14  Street, Sydney New South Wales 2010, and is doing business in and with California,
15  including contracting and conspiring with California resident, SOLOMON to
16  distribute the Subject Photography (as defined below).

17       11.   Plaintiff is informed and believes, and thereon alleges that, Defendant
18  Peter Nigel Neilson ("NEILSON") is an individual residing in London, England, and
19  is doing business in and with California, including contracting and conspiring with
20  California resident, SOLOMON, to reproduce the Subject Photography (as defined
21  below) in Los Angeles, California.

22       12.   Plaintiff is informed and believes, and thereon alleges that, Defendant
23  Keith Peter Allsopp ("ALLSOPP") is an individual residing in Uxbridge, England,
24  and is doing business in and with California, including contracting and conspiring
25  with California resident, SOLOMON, to reproduce the Subject Photography (as
26  defined below) in Los Angeles, California.

27       13.   Plaintiff is informed and believes, and thereon alleges that, Defendant
28  Michael Shaun Carter ("CARTER") is an individual residing in London, England,

and is doing business in and with California, including contracting and conspiring with California resident, SOLOMON, to reproduce the Subject Photography (as defined below) in Los Angeles, California.

14.     Defendants Does 1 through 10, inclusive, are other parties not yet identified who have infringed the exclusive rights at issue in this action, have contributed to the infringement such rights, or have engaged in one or more of the wrongful practices such as contributing to or participating in the unlawful conspiracy to pass of and sell infringing counterfeit works as alleged herein. Their true names, whether corporate, individual or otherwise, are presently unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

15.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## CLAIMS RELATED TO THE SUBJECT PHOTOGRAPHY

16.     NEWTON is the sole and exclusive owner, agent and representative for the licensing and use of certain original photographs (the "Subject Photography") from the archives of the late preeminent photographer Helmut Newton.

17.      Certain Subject Photography was registered with the United States Copyright Office before the institution of this lawsuit, as identified in the concurrently filed AO-121 pleading form, while all other Subject Photography at

- 4 -

issue in this action was published outside of the United States and within nations that are signatories to the Berne Convention, thus negating the registration requirement for those artworks.

18.     In 1984, Helmut Newton agreed to produce up to 3,375 limited edition and archival prints for SOLOMON who had the exclusive right to sell and distribute these prints for a period of two years. The contract was not renewed, and a dispute later arose between NEWTON, SOLOMON, and Helmut Newton's Paris agent, John Dunnicliff concerning ownership of certain Helmut Newton prints.

19.     In or about April-May 2012, SOLOMON and Dunnicliff entered into a settlement agreement with NEWTON, wherein SOLOMON was allowed to keep a small number of framed 1980's-era promotional posters for Helmut Newton's "Private Property Portfolio" and Dunnicliff was allowed to maintain approximately 11 Polaroid prints and 140 mounted transparencies. SOLOMON and Dunnicliff were further allowed to possess any "lawfully made copies of Helmut Newton photographs lawfully acquired by said parties" that were already in their possession and control at the time of the effective date of the settlement agreement. Defendants had to provide a Certificate of Destruction "indicating that every copy of any poster or Helmut Newton photograph reproduced by Defendants or any of them, has been destroyed by an independent third party shredding service." Moreover, Defendants agreed "to immediately notify" the HNF' counsel "if they were able to locate any other reproductions of any Helmut Newton photographs created by, or with the participation of, any Defendant, including … promotional materials wherever located, and shall arrange for the destruction of such materials at the Foundation's expense."

20.     SOLOMON and Dunnicliff were explicitly prohibited from reproducing any of the posters, photographs, or transparencies.

21.     Pursuant to the settlement agreement, SOLOMON further agreed to, *inter alia*, destroy all posters featuring Subject Photography in his possession or

control, or that would later be found, that he was not explicitly allowed to own per the terms of the settlement agreement; and that he did not have any adjustment right, reproduction right or copyrights whatsoever in the Subject Photography or the artworks featured in the transparencies, photographs, or posters subject of the settlement agreement.

22.     Pursuant to the settlement agreement SOLOMON acknowledged and agreed that he waived all rights to challenge the validity of copyrights in and to the Subject Photography or any other Helmut Newton photographs and would not dispute the validity of copyrights or NEWTON's ownership of copyrights in such photography.

23.     Per Dunnicliff's declaration: "[O]n January 11 2013, Norman Solomon purchased the 112 (one hundred and twelve) 35mm black & white slides [transparencies] of Helmut Newton's photographs which were taken by Mr. Newton himself from which Mr. Newton produced a series of silver gelatin prints that [Dunnicliff] used to introduce his works while [Dunnicliff] was his Paris based agent. Included in the purchase are 7 of the 11 (eleven) Polaroid photographs."

24.     ONGallery was a UK-based online art gallery, specializing in vintage photography and limited-edition fine art prints.

25.     Prior to LANDREY's purchase, with his father, of the majority shares of ONGallery, CARTER, NEILSON, and ALLSOP were majority shareholders of ONGallery as well as Directors.

26.     In or about May of 2015, NEISLON traveled to the United States to meet with SOLOMON and discussed a business deal to display and sell Helmut Newton prints from SOLOMON through ONGallery.

27.     On or about, November 11, 2015, the parties entered an agreement for ONGallery's purchase of "original silver gelatin vintage Helmut Newton prints" from SOLOMON identified as follows:

- 1 x 16x20" Saddle II

- 2 x 16x20" The Elevator Pitch
- 2 x 16x20" Mannequin being tossed off roof
- 2 x 16x20" Blond on Blond
- 2 x 16x20" Jerry Hall spitting water at model's breasts
- 2 x 16x20" Model in fur with bear
- 2 x 16x20" Girls surrounded by gendarmes in the Bois de Boulogne
- 1 x 16x20" Babes in rowboat with man
- 2 x 16x20" Charlotte Rampling
- 2 x 16x20" fashionable woman being greeted at the door by maid
- 1 x 16x20" Rue Aubriot
- 1 x 16x20" Beach Exercise
- 1 x 16x20" Man kissing detached hand of mannequin
- 1 x 16x20" Model in bra and stockings on bed
- 1 x 16x20" Nude in cast next to Cadillac
- 1x 16x20" Winnie at the Negresco
- 1 x 16x20" Elsa Peretti in bunny costume
- 1 x 16x20" Model being dressed with arms up in V shape
- 1 x 16x20" Woman being filmed with Bulgari necklace

28. The agreement further provided:

- Upon an order the Vendor will, within a maximum of ten days, make ready the artwork for ONGallery's couriers to collect from the Vendor. ONGallery will be responsible for the cost of delivery to the UK and any duty payable. Based on preagreed costs, ONGallery will also be responsible for any restoration costs applicable.
- ONGallery will pay to the Vendor one thousand US dollars ($1,000) for each HN print sold. The payment will be within seven days of receipt of an invoice from the Vendor. In addition, where a replacement print is available, ONGallery will pay to the Vendor a restoration cost of that

1    print of two hundred and twenty five US dollars ($225).

2    29.    ONGallery and SOLOMON further agreed to host a "pop-up" exhibit

3    from November 26 - November 28, 2015 of 26 original vintage gelatin prints

4    produced in limited numbers by Helmut Newton from transparencies. The prints

5    would further be for sale at the pop-up as well as online.

6    30.    In response to this advertisement, on November 23, 2015, NEWTON's

7    German counsel sent ONGallery a demand to cease and desist and informing it that

8    Helmut Newton never produced such prints from transparencies, he never gifted

9    vintage prints to SOLOMON, and the settlement agreement with NEWTON

10   "explicitly details certain items [SOLOMON] may maintain as personal property"…

11   "lists no such prints and"… "explicitly says that any rights"… "do not include any

12   reproduction or copyrights."

13   31.    SOLOMON then explained to NEILSON "Although the settlement

14   stated that we could retain certain Newton works, including his Polaroids, a series of

15   transparencies, and 'whatever else' of Newton that we possessed at the time

16   amazingly, to me and my attorney, they did not require or include a 'schedule' of what

17   we were permitted to keep.  Also, Newton's agent, John Dunnicliff, did not want to

18   reveal what he had accumulated, been gifted, over the ten year span that he worked

19   for Helmut in Paris. Therefore I took a personal inventory but, in reality, they have no

20   record."

21   32.    ONGallery informed NEWTON it believed SOLOMON had the right to

22   sell these 26 prints.

23   33.    Unaware of actual copying, NEWTON's representative reiterated that

24   Helmut Newton did not produce such exhibition prints from transparencies, and thus

25   SOLOMON and ONGallery were misrepresenting the nature of the Helmut Newton

26   prints.

27   34.    ONGallery, through NEILSON, CARTER, and ALLSOP continued

28   working with SOLOMON; however, it soon became clear that SOLOMON was

copying and reproducing Helmut Newton's photographs, despite NEWTON informing them that SOLOMON held no copyrights in the Subject Photographs. Specific instances of SOLOMON admitting to reproducing prints, include but are not limited to:

- On November 15, 2015, SOLOMON emailed NEILSON and Lance Leman stating "this endeavor has been very time consumming [sic] for me in... overseeing the selection and restoration processing. I am returning to the lab to review the re-restored prints and the scans which will be sent to you today..."

- On January 17, 2016, SOLOMON wrote that he had "Two types of intventory [sic], one actual prints and one of scans of my poster prints." And because there was no inventory of what he and Dunnicliff possessed, SOLOMON "just took possession, stored everything, and over the following two years…restored what I could" and "then also sold a series of prints…There are obviously 'grey areas' but the entire art and photography world is a grey area."

35.     Then on April 20, 2016, SOLOMON wrote, he was trying to digitally enhance the Rue Abriot, despite emailing NEILSON, CARTER, and ALLSOP on December 15, 2017 that the "Last 16x20 Rue Arbiot to be shipped this week."

36.     SOLOMON's statement led to NEILSON, CARTER, and ALLSOP inquiring as to the legality of SOLOMON's actions, and eventually actively participating and profiting from these unauthorized reproductions by misrepresenting the nature of the prints to ONGallery's customers.

37.     In response to SOLOMON's statement that he was digitally enhancing the Rue Arbiot, ALLSOPP on April 21, 2016 wrote to Lance Leman, "I really think Norman is trying to print more HNs."

38.     Lance Leman wrote: "Yes. He and John Dunnicliffe [sic] think they are entitled to do so, but from the settlement agreement I've seen, I fail to understand

how they come to that conclusion."

39.     ALLSOPP then wrote: "My concern is that if they do and it gets publicly known, our HN collection will be worthless."

40.     Lance Leman wrote: "We have an exclusive contract, good for another 18 months, so lets hope he honours it. [sic]"

41.     ALLSOPP in response said: "But we will not know if he's sending us original or reprints. Rarity is the key so we can't sell unlimited reprints."

42.     Later that day, SOLOMON wrote ALLSOP and Lance Leman "the lab is working on the Rue Abriot high res scan to produce a 'test print' so, let me know if you want another on consignment as that was your most popular print and I'm hoping that some more revenue will be achieved via On Gallery??"

43.     In response to SOLOMON ALLSOPP wrote: "Are you saying you are printing more Rue Aubriots? I doubt we could get away with that having already said numbers are limited."

44.     However, on October 24, 2016 ALLSOPP wrote to ONGallery's directors:

All,

We agreed we should send a mailing to our existing customers of HN who haven't bought Rue Aubriot to tell them we have a fantastic surprise, along the lines of:

"Dear………

As a valued customer of our Norman Solomon collection original vintage Helmut Newton prints, I'm delighted to tell you we have been able to secure an additional two Rue Aubriots at 16" x 20".

We sold out of the limited number of these fabulous and iconic vintage prints we had available in 2015, within weeks of their arrival with us. Now, Norman Solomon has release his last remaining two, one from his personal collection and another from consignment with a

1    US gallery."

2    45.    On February 24, 2017, NEILSON and ALLSOPP emailed SOLOMON

3    stating: "Peter and I will take a decision on the Rue Aubriot on Monday.  It is

4    tempting, but we have announced the discovery of the last remaining Rue twice

5    already, so I have to pre-sell it…I hope that will happen this weekend."

6    46.    In sum, ONGallery sold 19 prints of the Rue Aubriot despite

7    SOLOMON originally representing that he had six.

8    47.    Similarly, regarding a photograph of David Bowie, on March 10, 2017,

9    SOLOMON wrote to Keith ALLSOPP that he could produce the portrait as a crop or

10   with David Bowie in front of jail bars because SOLOMON "had the original print

11   cut/cropped to center it."

12   48.    In response, ALLSOPP wrote: "The one we originally had from you had

13   the bars in the background and we've only sold one. This is significantly larger

14   picture and I think more saleable, but having told the world it is probably unique, I

15   am reluctant to market another. Still, I've already had a coupe of enquiries for it, so

16   maybe I can sell two or more without having to reveal there are more that one. I have

17   to maintain market credibility so that I become the trusted and respected source of

18   Newton's work, at least until I manage to see it all!"

19   49.    Later that day in response to an email from SOLOMON discussing

20   "restoration," ALLSOPP wrote "Norman, it sounds like you're printing them!"

21   50.    In response SOLOMON wrote, "In just a few cases, to properly restore a

22   very difficult print (remember all only once I've of these are pre 1985), keep the

23   continuity and adjust the central focus we reworked a print into a high res scan. This

24   would have to be done to properly restore the 'Mirror' print.'  I have 114 original

25   transparencies produced by Helmut but only used them when I had a corresponding

26   print that had to be completely reworked. Over a year ago. [sic] I mentioned this to

27   Peter."

28   51.    In addition to selling unauthorized copies of Helmut Newton prints,

- 11 -

SOLOMON, CARTER, NEILSON, and ALLSOPP through ONGallery sold several unauthorized copies with counterfeit signatures. SOLOMON represented he acquired these prints from individuals in France and Germany as Helmut Newton "signed a range of prints for friends, acquaintances and business colleagues who paid him small amounts for each print."

52.     On October 8, 2019, however, ALLSOPP received an email from Mallet International, a major auction house in Japan, informing him that both NEWTON and Mallet International's photograph expert examined the signatures on three Helmut Newton prints offered for sale by ONGallery, and confirmed that the signatures were not authentic.

53.     Despite two experts representing they were counterfeit prints, ONGallery continued to fraudulently misrepresent signed prints from SOLOMON as authentic originals.

54.     In total ONGallery purchased at least $340,000.00 worth of fraudulent prints from SOLOMON from 2015 to 2020 and sold them to 70 clients in 20 countries.

55.     Plaintiffs are informed and believe, and thereon allege, that after SOLOMON entered into the settlement agreement, Defendants were displaying, advertising, offering for sale, and selling infringing copies of the Subject Photography without permission and in violation of the settlement agreement and 1984 agreement concerning a limited distribution of "Private Property Portfolio" photography.

56.     Plaintiff is informed and believes and thereon alleges that following the legitimate publication and display of the Subject Photography, Defendants offered unauthorized or illicit copies of the Subject Photography ("Infringing Works") for sale without authorization, including, but not limited to, through GLOBAL IMAGES via, *inter alia*, the website at https://globalimages.art/,  and ONGallery, as well as other online platforms and galleries around the world including LYONS GALLERY

in Australia.

57.     Plaintiff is informed and believe and thereon alleges that Defendants offered the Infringing Works for sale with false provenance in the form of stamp, signature, or stated narrative that the infringing copies were authentic and authorized, indicating to the public that the Infringing Works originated with NEWTON.

58.     In offering the Infringing Works, Defendants falsely represented that the counterfeit Infringing Works were authorized, or otherwise were genuine originals, legally-authorized prints, "signed limited editions," or "Estate Certified prints."

59.     In or about the summer of 2020, LANDREY expressed interest in purchasing ONGallery.

60.     Throughout the months of August and September 2020, NEILSON, ALLSOPP, and CARTER all represented that with the purchase of ONGallery, LANDREY would inherit what they referred to as a "treasure-trove" of vintage Helmut Newton prints.

61.     On or about September 13, 2020, LANDREY entered into an option agreement to purchase all shares of ONGallery.

62.     On September 15, 2022, ALLSOPP and LANDREY had a Skype meeting, wherein ALLSOPP explained the background of the ONGallery's relationship with SOLOMON, and how he held an inventory of "original vintage Helmut Newton prints from 1985 which had been held in archival conditions" and which he had the right to sell according to the 1984 and 2012 agreement with NEWTON. ALLSOPP confirmed their meeting via email with stating:  "We discussed the Solomon Collection and I provided high level information regarding that. Peter [NEILSON] is the initial and direct connection to Mr. Solomon but I have also established a good working relationship with him. I recommend you speak to Peter [NEILSON] for anything further on the agreement(s) etc."

63.     On September 19, 2020, NEILSON forwarded several documents

concerning how SOLOMON sourced the Helmut Newton prints, including the original agreement between ONGallery and SOLOMON, a pricing schedule, and addendum.

64.     On September 20, 2020, LANDREY met with NEILSON to inspect ONGallery's inventory and to discuss its agreement with SOLOMON further. NEILSON represented:

- Only NEWTON held the copyrights and any reproduction rights for the photographs.

- SOLOMON possessed a large inventory of prints, which Helmut Newton had gifted to SOLOMON in 1985 following the successful exhibitions that had been held in Paris, London and New York.

- SOLOMON had kept these prints in archival conditions.

- In 2012 there was an agreement between NEWTON and SOLOMON wherein NEWTON recognized that SOLOMON's inventory of prints had been legally acquired and that he had the right to dispose and sell these prints and posters as he wished.

- The reference to "restoration" in the contract referred to the removal of the original vintage print from archival storage, and for a laboratory to carefully restore the print to its prior exhibition quality by removing any bend, mark, crease, stain, etc.  There was no reproduction.

- NEILSON did not have the right to share the settlement agreement between NEWTON and SOLOMON, but he had seen these agreements and was satisfied that SOLOMON did hold the title and right to sell.

- ONGallery had received one claim of copyright infringement from the Bert Stern Estate concerning the coloring in a photograph of Marilyn Monroe. NEILSON stated that there had been no claim from NEWTON since the 2012 Agreement.

65.     Based on NEILSON, ALLSOPP, and CARTER's representations that

1  SOLOMON had title to these prints, and that ONGallery was not infringing

2  NEWTON's copyrights, on September 30, 2020, LANDREY and his father

3  purchased 100 percent of ONGallery's shares.

4      66.    Plaintiffs are informed and believe and thereon allege that NEILSON,

5  ALLSOPP, and CARTER misrepresented that certain Infringing Works that

6  SOLOMON, NEILSON, ALLSOPP, and CARTER would sell to LANDREY as a

7  part of the sale of the gallery or otherwise, were originals or authorized prints to

8  which SOLOMON had a right to sell, but that the these works were actually unlawful

9  copies that were created or copied as part of a collective fraudulent conspiracy with

10  certain DOE Defendant photograph labs or printing companies located in Texas and

11  Los Angeles, California, such as CONTACT, as well as certain DOE Defendant

12  photography dealer(s) located in New York and Australia such as ARTOGRAPHY

13  and LYONS GALLERY.

14      67.    Plaintiffs are informed and believe and thereon allege that SOLOMON

15  violated the express terms of the settlement agreement and participated in the

16  conspiracy with NEILSON, ALLSOPP, CARTER, certain DOE Defendants, and

17  others such as ARTOGRAPHY, LYONS GALLERY and CONTACT, to unlawfully

18  copy, modify, adjust, reproduce, distribute, and/or sell the Subject Photography

19  without authorization.

20      68.    Plaintiffs are informed and believe and thereon allege that SOLOMON

21  worked in concert with NEILSON, ALLSOPP, CARTER, certain DOE Defendants,

22  and others such as ARTOGRAPHY, LYONS GALLERY and CONTACT, to

23  unlawfully pass off as legitimate and sell for profit the Infringing Works worldwide,

24  including as part of the collective gallery sale to LANDREY and through sales made

25  by GLOBAL IMAGES and DOE Defendants.

26      69.    A non-exhaustive set of images of Subject Photography, along with

27  corresponding publication information for each such Subject Photography, are shown

28  in the chart attached hereto as **Exhibit A**. This chart further provides titles indicating

non-exhaustive examples of the sources that Defendants utilized to pass off, advertise, display, or sell Infringing Works or otherwise perpetrate the unlawful acts complained of herein; such as through GLOBAL IMAGES, LYONS GALLERY, ONGallery, or the unlawful dissemination stemming from the "Private Property Portfolio" collection discussed above.

70.	Screen captures of certain non-exhaustive examples of Defendants' offering for sale Infringing Works online are attached hereto as **Exhibit B**.

## **FIRST CLAIM FOR RELIEF**

(For Copyright Infringement – By the Helmut Newton Foundation Against All Defendants, and Each)

71.	Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

72.	Defendants, and each of them, had access to the Subject Photography, including, without limitation, through many years of direct exposure to the Subject Photography; through the possession of legitimate copies of Subject Photography; and viewing the Subject Photography on the World Wide Web.

73.	Defendants, and each of them, infringed NEWTON's copyrights by, *inter alia*, copying, publishing, selling, and displaying the Infringing Works to the public, including without limitation, the website(s) listed above, without NEWTON's authorization or consent.

74.	Due to Defendants', and each of their, acts of infringement, NEWTON has suffered general and special damages in an amount to be established at trial.

75.	Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in the Subject Photography. As such, NEWTON is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of NEWTON's rights in the Subject Photography in an amount to be established at trial

76.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Plaintiff will make its election between actual damages and statutory damages.

## SECOND CLAIM FOR RELIEF

(For Vicarious and/or Contributory Copyright Infringement - By the Helmut Newton Foundation Against All Defendants)

77.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

78.     Plaintiff is informed and believe and thereon alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Photography as alleged herein. Such conduct included, without limitation, publishing the Infringing Works obtained from third parties that Defendants knew, or should have known, were not authorized to reproduce, modify, publish, display or distribute the Subject Photography.

79.     Plaintiff is informed and believe and thereon alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants, and each of them, received revenue in connection with the aforementioned website posts and sales of the Infringing Works to galleries and individuals, that incorporated the unauthorized copies of the Subject Photography, and were able to supervise said posts, exploitations, and sales.

80.     By reason of the Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, NEWTON has suffered and will continue to

- 17 -

suffer substantial damages to its business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

81.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of NEWTON's rights in the Subject Photography. As such, NEWTON is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of their rights in the Subject Photography, in an amount to be established at trial.

82.     Plaintiff is informed and believe and thereon alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement and/or a preclusion from asserting certain equitable and other defenses.

## **THIRD CLAIM FOR RELIEF**

(For Violations of 18 U.S.C. § 1961(c) - By the Helmut Newton Foundation Against All Defendants)

83.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Defendant SOLOMON conspired with Doe Defendants to willfully infringe NEWTON's rights in the Subject Photography and to willfully pass off and sell the counterfeit Infringing Works to galleries and individuals worldwide. On information and belief, Plaintiff alleges that Defendant SOLOMON and Doe Defendants acted together to unlawfully source, modify, reproduce, adjust, and copy the Subject Photography that NEWTON has rights in and have illicit copies made of those works. Plaintiff alleges that Defendant SOLOMON and Doe Defendants applied a stamp, signature, or false statement/narrative to the copies or in advertising

the Infringing Works to give the copy the appearance of having originated from Plaintiff, and they offered the disputed works for sale with the goal of convincing buyers that the works Defendants had for sale were genuine.

85.     Defendant SOLOMON conspired with Doe Defendants to willfully and fraudulently create, manufacture, advertise, exploit, and sell the counterfeit Infringing Works to LANDREY or LANDREY's predecessors in interest, and others, while misrepresenting that the Infringing Works were legitimate or duly-authorized Subject Photography.

86.     The association of Defendant SOLOMON and Doe Defendants constituted an enterprise within the meaning of 18 U.S.C. § 1961(c), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce. This enterprise was continuous because the predicate act of copyright infringement was a regular way of conducting SOLOMON's ongoing online sales and of conducting or participating in the ongoing RICO enterprise. This enterprise poses a threat of continued willful copyright infringement, false endorsement, and fraud.

87.     Defendant SOLOMON participated and conspired with Doe Defendants to participate in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, all in violation of 18 U.S.C. § 1962(c).

88.     Under 18 U.S.C. § 1961 *et seq.*, Defendant SOLOMON and Doe Defendants are liable for all damages caused by the conspiracy to copy and sell copies of the Infringing Works, treble damages, and Plaintiffs' attorneys' fees.

## FOURTH CLAIM FOR RELIEF

(For Wire and Mail Fraud, Violations of 18 U.S.C. §§ 1341, 1343 - By the Helmut Newton Foundation Against All Defendants)

89.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

90.     Defendants and other members of the enterprise, having devised the

- 19 -

scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire or mail communication in interstate or foreign commerce writings or sounds for the purpose of executing such scheme or artifice (namely, to sell artwork with false signatures and/or provenance and/or designations of endorsement). Specifically, SOLOMON by use of interstate telephone wires, interstate mails, and/or interstate wires sold the fraudulent Infringing Works, including those identified in **Exhibits A-B**, in interstate and international commerce.

91.     Each participant knew, expected, reasonably foresaw, and intended that these transmissions by means of wire or mail communication in interstate or foreign commerce would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

92.     Defendants willfully and with intent to defraud sold counterfeit or forged artworks to, on information and belief, galleries and consumers including LANDREY and also misrepresented and/or concealed the material facts from them, as discussed above.

93.     These consumers relied upon Defendants' misrepresentations, and such reliance was reasonable, based on the appearance of signatures and/or stamps indicating provenance from Helmut Newton or his agents.

94.     Plaintiffs and consumers were injured by Defendants' fraudulent conduct, as discussed above.

## FIFTH CLAIM FOR RELIEF

(For Violations of 18 U.S.C.A. § 2318 - By the Helmut Newton Foundation Against All Defendants)

95.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

96.     On information and belief, Defendants willfully and wantonly trafficked in counterfeit and/or illicit labels affixed to, enclosing, or accompanying or designed

1    to be affixed to, enclose, or accompanying works of visual art.

2    97.      On information and belief, Defendants attached labels bearing false

3 signatures and indicia of authenticity to visual works of art, and did so with

4 knowledge of the falsity, as discussed above.

5    98.      The above-mentioned acts violate 18 U.S.C.A. § 2318 and expose

6 Defendants, and each of them to general, special, statutory, punitive and/or

7 exemplary damages.

8                          **SIXTH CLAIM FOR RELIEF**

9     (For Violation of the Lanham Act – By the Helmut Newton Foundation Against all

10                              Defendants, and Each)

11    99.      Plaintiffs reallege and incorporate by reference the preceding paragraphs

12 of this Complaint as if fully set forth herein.

13    100.      This is a claim for trademark infringement, false advertising, and false

14 designation of origin arising under 15 U.S.C. § 1125(a).

15    101.      Defendants have promoted and used in commerce the Infringing Works

16 without NEWTON's consent and while holding such uses out as having been

17 endorsed or certified by NEWTON or Helmut Newton in a manner that infringes

18 NEWTON's rights in violation of 15 U.S.C. § 1125(a).

19    102.      Plaintiff is informed and believes and thereon alleges that Defendants

20 used the Infringing Works in connection with the promotion, marketing, and

21 advertising of Defendants' businesses, goods, or services in a manner which is likely

22 to cause confusion, or to cause mistake, or to deceive the public that Defendants'

23 goods or services are authorized, sponsored, or approved by or are affiliated with

24 NEWTON.

25    103.      Per Section 43(a) of the Lanham Act, Defendants have engaged in unfair

26 competition by exploiting the Infringing Works; and, in doing so, Defendants, and

27 each of them, have engaged in false advertising and created a false association and/or

28 false endorsement between NEWTON and Defendants, and each of them, and their

respective products and services.

104.    NEWTON at no time authorized or approved of Defendants' use of any Subject Photography beyond the scope of the above-referenced settlement agreement.

105.    NEWTON is informed and believes and thereon alleges that Defendants' acts as alleged herein were done with actual knowledge of NEWTON's ownership and exclusive rights in and to the Subject Photography, and with the intent to unfairly compete, to trade upon NEWTON's reputation and goodwill by causing confusion and mistake among consumers and the public, and to deceive the public into believing that Defendants' businesses, goods, or services are associated with, sponsored by, originate from, or are approved by NEWTON, when they are not.

106.    Defendants' activities constitute willful and intentional infringement of Helmut Newton/NEWTON's name, directly and/or indirectly, in total disregard of NEWTON's proprietary rights, and were done despite Defendants' knowledge that the use of Helmut Newton's name was and is in direct contravention of NEWTON's rights. At a minimum, Defendants acted with willful blindness or reckless disregard of NEWTON's rights or the rights of the consuming public.

107.    Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from the use of Helmut Newton's name in an amount that is not presently known to Plaintiff. By reason of Defendants' actions, constituting unauthorized use of Plaintiff's voice and performance, NEWTON has been damaged and is entitled to monetary relief in an amount to be determined at trial.

108.    Due to Defendants' actions, constituting unauthorized use of the Subject Photography and Helmut Newton's name, NEWTON has suffered and continues to suffer great and irreparable injury, for which NEWTON has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

(Intentional Misrepresentation – By Landrey Against Defendants Neilson, Allsopp,

1    and Carter)

2    109.    Plaintiffs reallege and incorporate by reference the preceding paragraphs

3    of this Complaint as if fully set forth herein.

4    110.    NEILSON, ALLSOPP, and CARTER made the following

5    representations to Plaintiff which they held out to be true:

6         a.   SOLOMON possessed and was entitled to a collection of original,

7              silver gelatin, vintage Helmut Newton photographs, which he kept in

8              archival conditions;

9         b.   All rights required for distributing these prints by sale had been

10             obtained by SOLOMON from NEWTON, memorialized in the 2012

11             Agreement with NEWTON, and ONGallery was entitled to

12             distribute these Helmut Newton prints;

13        c.   ONGallery's sourcing, marketing, and sale of the Helmut Newton

14             prints did not infringe, and never had infringed NETWON's

15             copyrights;

16        d.    ONGallery has not been the recipient of any demands to cease and

17             desist, complaints, and/or other allegations of copyright

18             infringement concerning the Helmut Newton prints and posters;

19        e.   The term "restoration" in ONGallery's contract with SOLOMON

20             referred to the removal of the original Helmut Newton print from

21             archival storage, and for a laboratory to carefully restore the print to

22             its prior exhibition quality by removing any bend, mark, crease, etc.,

23             and ONGallery's payment for this service was to ensure a high-

24             quality print without reproducing the image.

25    111.    NEILSON, ALLSOPP, and CARTER knew that their representations

26    were false at the time they were made, and intended for LANDREY to rely on these

27    representations in purchasing ONGallery;

28    112.    LANDREY reasonably relied on NEILSON, ALLSOPP, and

1  CARTER's representations;

2      113.        As a result of NEILSON, ALLSOPP, and CARTER's representations

3  LANDREY was harmed.

4                    **EIGHTH CLAIM FOR RELIEF**

5      (Negligent Misrepresentation – By Landrey Against Defendants Neilson, Allsopp,

6                              and Carter)

7      114.        Plaintiffs reallege and incorporate by reference the preceding paragraphs

8  of this Complaint as if fully set forth herein.

9      115.        NEILSON, ALLSOPP, and CARTER made the following

10 representations to Plaintiff which they held out to be true:

11              a.  SOLOMON possessed and was entitled to a collection of original,

12                  silver gelatin, vintage Helmut Newton photographs, which he kept in

13                  archival conditions;

14              b.  All rights required for distributing these prints by sale had been

15                  obtained by SOLOMON from NEWTON, memorialized in the 2012

16                  Agreement with NEWTON, and ONGallery was entitled to

17                  distribute these Helmut Newton prints;

18              c.  The sourcing, marketing and sale of the Helmut Newton prints by

19                  ONGallery did not infringe, and never had infringed NETWON's

20                  copyrights;

21              d.   ONGallery has not been the recipient of any demands to cease and

22                  desist, complaints, and/or other allegations of copyright

23                  infringement concerning the Helmut Newton prints and posters;

24              e.  The term "restoration" in ONGallery's contract with SOLOMON

25                  referred to the removal of the original Helmut Newton print from

26                  archival storage, and for a laboratory to carefully restore the print to

27                  its prior exhibition quality by removing any bend, mark, crease, etc.,

28

1  and ONGallery's payment for this service was to ensure a high-

2  quality print without reproducing the image.

3  116.  NEILSON, ALLSOPP, and CARTER had no reasonable grounds for

4  believing the representations were true when made, and intended for LANDREY to

5  rely on these representations in purchasing ONGallery;

6  117.  LANDREY reasonably relied on NEILSON, ALLSOPP, and

7  CARTER's representations;

8  118.  As a result of NEILSON, ALLSOPP, and CARTER's representations

9  LANDREY was harmed.

10  **<ins>NINTH CLAIM FOR RELIEF</ins>**

11  (Fraudulent Concealment – By Landrey Against Defendants Neilson, Allsopp, and

12  Carter)

13  119.  Plaintiffs reallege and incorporate by reference the preceding paragraphs

14  of this Complaint as if fully set forth herein.

15  120.  NEILSON, ALLSOPP, and CARTER concealed certain material facts

16  from LANDREY, including that:

17  f.  SOLOMON was reproducing, altering, manipulating, and

18  distributing Helmut Newton photographs without authorization and

19  in violation of his agreement with NEWTON in 2012;

20  g.  The 2012 Agreement between SOLOMON and NEWTON did not

21  entitle SOLOMON and/or ONGallery to reproduce and distribute

22  certain Helmut Newton prints;

23  h.  The sourcing, marketing and sale of the Helmut Newton prints by

24  ONGallery did infringe, and had infringed NETWON's copyrights;

25  i.  ONGallery had received demands to cease and desist, and other

26  allegations of copyright infringement concerning the Helmut

27  Newton prints and posters in 2015;

28

j.  The term "restoration" in ONGallery's contract with SOLOMON did not refer to the removal of the original Helmut Newton print from archival storage, and for a s to carefully restore the print to its prior exhibition quality by removing any bend, mark, crease, etc., but rather referred to the scanning, manipulation, alteration, correction, and reprinting of damaged photographs

121.  NEILSON, ALLSOPP, and CARTER intended to deceive LANDREY by concealing these facts;

122.  As a result of NEILSON, ALLSOPP, and CARTER's concealment, LANDREY was harmed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

### **Against All Defendants**

#### With Respect to Each Claim for Relief

a.  That Defendants, their agents and employees be enjoined from infringing Plaintiff's copyrights and trademark rights in any manner, specifically those for the Subject Photography and Helmut Newton;

b.  That NEWTON be awarded all profits of Defendants plus all losses of NEWTON, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

c.  That NEWTON be awarded all damages in connection with the Defendants' trademark infringement, false advertising, and false designation of origin arising under 15 U.S.C. § 1125(a);

d.  That NEWTON be awarded all damages in connection with Defendants' violations of 18 U.S.C. §§ 1341, 1343, 1961(c), and 2318, as well as any other applicable statute subject of this complaint;

e.  That NEWTON be awarded treble and/or punitive damages in connection with Defendants' acts of infringement, illegal trafficking and counterfeiting, fraud, and misrepresentations discussed herein;

f.  That NEWTON be awarded attorneys' fees as available under the Copyright Act U.S.C. §§ 101, *et seq.* or any other applicable statute;

g.  That Defendants, and each of them, account to NEWTON for their profits and any damages sustained by Plaintiff arising from the foregoing acts of infringement;

h.  That LANDREY be awarded compensatory, general, and punitive damages according to proof;

i.  That Plaintiffs be awarded pre-judgment interest as allowed by law;

j.  That Plaintiffs be awarded the costs of this action; and

k.  That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Dated: December 23, 2022          By:    */s/ Scott Alan Burroughs*
                                         Scott Alan Burroughs, Esq.
                                         Trevor W. Barrett, Esq.
                                         Kelsey M. Schultz, Esq.
                                         DONIGER / BURROUGHS
                                         Attorneys for Plaintiff

COMPLAINT